1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

TOMAS AFEWORKI,

8

Plaintiff,

9

v.

10

STEVE THOMPSON, et al.,

11

Defendants.

12

No. C06-628MJP

ORDER GRANTING SUMMARY
JUDGMENT IN FAVOR OF
DEFENDANT THOMPSON

13

14

On June 13, 2007, the Court issued an order that granted in part Defendants' motion for

15

summary judgment and requested that the parties submit supplemental briefing on issues related to

16

Plaintiff's remaining claim against Defendant Steve Thompson. (Dkt. No. 51.)  Having reviewed the

17

parties' supplemental briefing (Dkt. Nos. 52-58) and the balance of the record, the Court GRANTS

18

summary judgment in favor of Defendant Thompson for the reasons stated below.

19

**Background**

20

The Court set forth the background of this case in its June 13th order.  To summarize briefly,

21

Plaintiff Tomas Afeworki was arrested in Everett, Washington on January 7, 2005, after police

22

responded to a 911 call.  He was booked into Snohomish County Jail later that day on charges of

23

robbery and kidnapping.  Plaintiff was also booked on three outstanding warrants, including a warrant

24

from the Washington Department of Corrections for community custody violations.

25

ORDER - 1

1    On January 9, 2005, District Court Commissioner Paul Moon entered a provisional order

2  setting bail for Plaintiff.  In their summary judgment motion, Defendants maintained that

3  Commissioner Moon's order also included a probable cause determination regarding the robbery and

4  kidnapping charges.  However, such a determination is not readily apparent from the order itself.

5  Plaintiff did not appear before Commissioner Moon on January 9th, and there is no dispute that

6  Plaintiff did not receive a preliminary appearance before a judicial officer prior to his arraignment on

7  January 24, 2005.

8    Plaintiff alleges that his constitutional rights were violated because he was held in jail for 17

9  days following his arrest without a preliminary appearance before a judge.  In his complaint, Plaintiff

10  stated this claim as follows: "On January 7, 2005, I was arrested and booked into Snohomish County

11  Correction . . . where I did not appear before any judge as required by court rule, CrR 3.2.1, and the

12  federal constitution, for seventeen (17) days."  (Amended Complaint at 5).  Plaintiff brings this claim

13  against jail director Steve Thompson.  Plaintiff alleges that Mr. Thompson was "given notice and

14  opportunity to correct this error and he chose not to do so."  (Amended Complaint at 9).

15    In its order dated June 13, 2007, the Court directed the parties to submit supplemental briefing

16  on several issues.  First, the Court asked the parties to address two cases in which courts have held

17  that failure to provide an arrestee with a preliminary appearance before a judicial officer within a

18  reasonable time following arrest may constitute a due process violation:  Hayes v. Faulkner County,

19  388 F.3d 669 (8th Cir. 2004) and Coleman v. Frantz, 754 F.2d 719 (7th Cir. 1985), receded from on

20  other grounds by Benson v. Allphin, 786 F.2d 268 (7th Cir. 1986).

21    The Court also noted that in a letter dated February 3, 2005, Plaintiff had complained to Mr.

22  Thompson about his failure to receive a preliminary appearance.  This letter was received after Plaintiff

23  appeared in court on January 24, 2005 for his arraignment.  The Court directed the parties to submit

24  supplemental briefing on whether Plaintiff submitted any grievances to Mr. Thompson prior to January

25  24th regarding his failure to receive a timely preliminary appearance.

ORDER - 2

1    The Court also noted that Plaintiff was booked into Snohomish County jail on January 7, 2005

2    on outstanding warrants, including a warrant from the Washington Department of Corrections (DOC)

3    for parole violations.[1]  Plaintiff received a hearing before a DOC hearings officer on January 18, 2005,

4    where he was found guilty of community custody violations and sanctioned to 120 days of

5    confinement retroactive to January 7, 2005.  The Court asked the parties to address whether these

6    facts would impact Plaintiff's claim that his constitutional rights were violated when he was detained

7    without a preliminary appearance before a judge between January 7 through January 24, 2005.

8    Finally, the Court requested supplemental briefing to provide further information regarding: (1)

9    Mr. Thompson's contention that he should enjoy qualified immunity from Plaintiff's claim; and (2)

10   whether Commissioner Moon made a probable cause determination in his order dated January 9, 2005

11   regarding the robbery and kidnapping charges against Plaintiff.

12   In his supplemental brief, Defendant Thompson acknowledges that Plaintiff submitted at least

13   one "kite" to Mr. Thompson prior to February 3, 2005 that complained about Plaintiff's failure to

14   receive a preliminary appearance.  Defendant asserts that Snohomish County jail does not retain copies

15   of inmate kites, and neither side has provided the Court with Plaintiff's first kite or any written

16   response to the kite.  Mr. Thompson has offered evidence that his personal secretary Beth Taylor

17   received and responded to this kite.  Ms. Taylor indicates that she does not have a record of her

18   response to this kite and cannot remember the exact date of the communication.  Ms. Taylor states:

19   > It is my memory that Mr. Afeworki's kite demanded that Director Thompson immediately
20   > release him from the jail.  Upon receipt of this kite, I consulted with our records department
     > who confirmed that we were indeed in possession of the proper court documents authorizing
21   > his confinement.  I believe I then communicated with Mr. Afeworki, and informed him Director
     > Thompson could not release him absent court authorization.  I believe I suggested that he bring
22   > this matter to the attention of his attorney or the court.  I also believe I told Mr. Afeworki that

23   [1] To be more accurate, DOC issued a warrant for Plaintiff's arrest based on alleged violations
24   of "community custody" requirements, rather than for parole violations.  Washington law defines
     "community custody" as "that portion of an offender's sentence of confinement . . . served in the
25   community subject to controls placed on the offender's movement and activities by the department [of
     corrections]."  RCW 9.94A.030(5).

1        if he required assistance in contacting either of these parties that he should seek assistance
      from his module counselor.  I do not believe I communicated Mr. Afeworki's concerns to
2        Director Thompson.

3  (Taylor Decl. ¶ 5.)

4        In response, Plaintiff asserts that he submitted his first kite to Mr. Thompson "soon after" he

5  had been detained for 72 hours and that this kite stated that he had never received a preliminary

6  hearing and that he was being unlawfully detained.  (Afeworki Supp. Decl. ¶ 5.)  He also contends that

7  Ms. Taylor's response to his kite "stated that she has notified Steve Thompson and this problem will

8  not be ad[d]ressed."  Id.

9        Defendant has also offered a declaration from District Court Commissioner Paul Moon.

10  Commissioner Moon states that he made a probable cause determination on January 9, 2005 on the

11  robbery and kidnapping charges against Plaintiff.  Commissioner Moon indicates that he noted the

12  probable cause determination on his January 9th order by writing "P.C. both" and his initials on the

13  upper right hand corner of the order.

14                                         **Analysis**

15        There is no dispute that Plaintiff was detained for 17 days following his arrest in January 2005

16  without a preliminary appearance before a judge.  As the Court noted in its June 13th order, the

17  Seventh Circuit in Coleman and the Eighth Circuit in Hayes have held that an arrestee's extended

18  detention without a preliminary or first appearance before a judicial officer may constitute a due

19  process violation.

20        In Coleman, the plaintiff was detained in jail without a first appearance for 18 days following

21  his arrest on charges of receiving stolen property.  At the direction of the prosecutor, the plaintiff was

22  released after 18 days and the charges against him were later dropped.

23        As the Coleman court observed, the Due Process Clause prohibits state action which "shocks

24  the conscience of the court" or is "highly offensive to the 'concept of ordered liberty.'"  Coleman, 754

25  F.2d at 723.  The Coleman court noted that a first appearance serves to enforce or give meaning to a

ORDER - 4

number of important rights, including: (1) the Sixth Amendment right to be informed of the charge; (2) the Sixth Amendment right to be informed of the right to counsel, including the right to appointed counsel for indigent defendants; (3) the Fifth Amendment right to be informed of the right to remain silent under the privilege against self-incrimination; and (4) the Eighth Amendment right to have bail set or reviewed.  Id. at 724.  The court stated that "[a]n extended detention before a first appearance, whether or not there has been a valid determination of probable cause, substantially impinges upon and threatens all of these rights."  Id.   The court also observed that "[p]retrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationship."  Id. at 723.  Under the circumstances presented in the case, the Coleman court concluded that the plaintiff's constitutional rights had been violated, finding that "[t]he protracted incarceration of Mr. Coleman with its incident harms is constitutionally impermissible because it is wholly inconsistent with notions of 'fundamental fairness' required of criminal prosecutions under the Due Process Clause and with the concept of 'ordered liberty.'"  Id.

However, the Coleman court also noted that "[t]his opinion does not attempt to delineate every contour of a constitutional right to a timely first appearance under the Due Process Clause" and that "[o]ur holding today is limited to the extreme circumstances of this case."  Coleman, 754 F.2d at 725.  The court observed that "[i]n the case before us, none of the procedural protections afforded by a first appearance were ever granted the plaintiff over the course of his nearly three-week incarceration despite his protests of innocence, requests for a court appearance, and ultimate release."  Id.

This case bears some surface similarities to the Coleman case.  Most obviously, the arrestee in Coleman was detained without a first appearance for 18 days following his arrest, while in this case Plaintiff was detained without a preliminary appearance for 17 days following his arrest.  Similarly, in both cases the arrestee attempted to notify his custodian that he had not received a preliminary appearance.  However, this case is also distinguishable from Coleman in key respects.

1      First, Plaintiff was not detained in Snohomish County jail on January 7, 2005, solely on charges

2  of robbery and kidnapping.  Plaintiff was also detained pursuant to several outstanding warrants,

3  including an arrest warrant issued by the Washington Department of Corrections (DOC) for alleged

4  violations of community custody requirements that had been imposed on Plaintiff following a prior

5  conviction.  Under Washington law, the DOC may issue warrants for the arrest of any offender who

6  violates a condition of community custody.  See RCW 9.94A.740(1).  Such warrants authorize any

7  law enforcement officer "to arrest the offender and place him or her in total confinement pending

8  disposition of the alleged violation."  Id.  Hearings on community custody violations are "considered

9  as offender disciplinary proceedings" and are conducted by DOC hearing officers, rather than state

10  court judges.  See RCW 9.94A.737(3) & WAC 137-104-050.  It is not clear from the statute or

11  regulations that a person detained pursuant to a DOC arrest warrant issued under RCW 9.94A.740(1)

12  is entitled to a preliminary appearance before a judge.

13      Plaintiff had a community custody violation hearing before a DOC hearing officer on January

14  18, 2005, where he pled guilty to several violations and was sanctioned to 120 days of detention

15  retroactive to his arrest date of January 7, 2005.  This hearing was held within 11 calendar days (and

16  on the sixth working day) following Plaintiff's arrest.[2]  In analogous situations, the Ninth Circuit has

17  found no due process violations in cases where parolees were detained for significantly longer periods

18  of time before receiving a preliminary interview or hearing following arrests for alleged parole

19  violations.  See, e.g., Benny v. U.S. Parole Comm'n, 295 F.3d 977, 986 (9th Cir. 2002) (no due

20  process violation where a parolee was detained for 31 days before receiving a preliminary interview on

21  parole violation charges); Vargas v. U.S. Parole Comm'n, 865 F.2d 191, 194 (9th Cir. 1988) (similar).

22  As a result, there would be no apparent basis to find a due process violation where an arrestee is

23

24
_____

25      [2]  Plaintiff was arrested on a Friday evening and the Monday preceding his DOC hearing was the Martin Luther King, Jr. holiday.

ORDER - 6

1    detained pursuant to a DOC warrant for alleged community custody violations and receives a

2    reasonably prompt hearing on the alleged violations.

3            Due to his community custody violations, Plaintiff would have been incarcerated between

4    January 7 and January 24, 2005 even if he had not also been detained on robbery and kidnapping

5    charges. By contrast, the plaintiff in Coleman was not subject to detention for parole or community

6    custody violations during the 18 days he was held in jail without a preliminary appearance following

7    his arrest. Instead, he was detained solely on charges of receiving stolen property, which were later

8    dropped.

9            Defendant also contends that during the 17 days between his arrest and his arraignment,

10   Plaintiff received many if not all of the procedural safeguards that a preliminary appearance is designed

11   to protect. In particular, Plaintiff was promptly represented by counsel from the Snohomish County

12   Public Defender Association, which entered an appearance on his behalf on January 11, 2005. In

13   contrast, the plaintiff in Coleman was not appointed counsel, although he did speak with a lawyer

14   during his first week of detention. Plaintiff also executed a notice on January 12, 2005 indicating that

15   he was being represented by the Snohomish County Public Defender Association and that he refused

16   to be questioned without the presence of his lawyer – a fact which suggests that Plaintiff was aware of

17   his right to remain silent. In addition, Commissioner Moon set bail and made a probable cause

18   determination on the robbery and kidnapping charges on January 9, 2005.

19           Defendant also suggests that this case is distinguishable from Coleman because Plaintiff

20   submitted only one "kite" to Mr. Thompson complaining about his failure to receive a preliminary

21   appearance during the 17 day period between his arrest and his arraignment. By contrast, the

22   Coleman court noted that "[d]uring his detention the plaintiff asked the Sheriff several times when he

23   was going to court and protested his innocence." Coleman, 754 F.2d at 721.

24           Considering the totality of circumstances presented here, Plaintiff's detention without an

25   appearance before a judicial officer for 17 days following his arrest is not as shocking to the

ORDER - 7

conscience or as "offensive to the concept of ordered liberty" as the facts presented in <u>Coleman</u>. In the 17 days following his arrest, Plaintiff was not detained solely on robbery and kidnapping charges; he was also subject to confinement due to his community custody violations and he received a reasonably prompt hearing on those violations within 11 days of his arrest. He also received the services of a public defender soon after he was detained. The Court does not condone the 17-day delay between Plaintiff's arrest and his first appearance before a judicial officer regarding other charges against him. However, the facts in this case are distinguishable from those in <u>Coleman</u>, where the court expressly limited its holding to the "extreme circumstances" presented in that case. <u>Coleman</u>, 754 F.2d at 725. Therefore, the Court will grant summary judgment in favor of Defendant Thompson.

Although the Court is granting summary judgment in Mr. Thompson's favor, the Court emphasizes that it does not regard Plaintiff's claims as "frivolous," as Defendants asserted in their summary judgment motion. <u>See</u> Dkt. No. 32 at 23 (characterizing Plaintiff's complaint as a "frivolous lawsuit."). The record in this case reveals poor or questionable conduct by officials in the Snohomish County judicial and correctional system, including:

    (1)    Failing to bring an arrestee before a judicial officer for 17 days after arrest, which under different circumstances than those presented here could well rise to the level of a due process violation;

    (2)    The failure of the commissioner to clearly spell out the court's probable cause determination for the robbery and kidnapping charges against Plaintiff; cryptically scribbling "P.C. both" in the corner of a form order is a poor substitute for a clear and unambiguous finding on this critical issue; and

    (3)    Ms. Taylor's apparent failure to alert Mr. Thompson that a prisoner under his custody had complained that he did not receive a preliminary appearance.

1  Today's order should not be construed as a ratification of such conduct.  Snohomish County officials

2  would be well-advised to take measures to prevent this type of conduct in the future.

3          Because the Court does not regard this action as frivolous and because the case is being

4  dismissed on summary judgment, this dismissal will not count as a "strike" against Plaintiff under 28

5  U.S.C. § 1915(g).  See, e.g., Ramsey v. Goord, 2007 WL 1199573 at * 2 (W.D.N.Y. Apr. 19, 2007)

6  ("a dismissal on summary judgment is generally not considered within the parameters of the three-

7  strikes rule's requirement that the actions be dismissed as frivolous, malicious, or for failure to state a

8  claim" and collecting cases).

9                                              **Conclusion**

10         Under the totality of the circumstances in this case, Plaintiff's detention in Snohomish County

11  jail  for 17 days before appearing before a judicial officer does not rise to the level of a violation of his

12  constitutional rights.  Therefore, the Court will grant summary judgment in favor of Defendant

13  Thompson.  Dismissal of this action will not count as a strike under 28 U.S.C. § 1915.

14         The Clerk is directed to send copies of this order to Plaintiff and to all counsel of record.

15         Dated:   September 5, 2007.

16                                              s/Marsha J. Pechman_____
                                               Marsha J. Pechman
17                                             United States District Judge